UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MARCELL TRAVON HERMAN ROBINSON III,<br><br>Defendant. | Case No.: 18-CR-5114-GPC<br><br>**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE**<br><br>[ECF No. 61] |

    Defendant Marcell Travon Herman Robinson III ("Robinson") has filed a *pro se* motion seeking compassionate release or reduction of his sentence under 18 U.S.C. § 3582(c). ECF No. 61. The Government opposes. ECF No. 66. For the reasons that follow, Defendant's motion is DENIED.

**I.     BACKGROUND**

    Defendant was convicted by guilty plea of one count of Conspiracy to Distribute Controlled Substances in violation of 21 U.S.C. §§ 846 and 841(a)(1) and two counts of Possession with Intent to Distribute Controlled Substances in violation of 21 U.S.C §

1

841(a)(1). ECF No. 44. Defendant was sentenced to a term of imprisonment of seventy-five months, followed by three years of supervised release. ECF No. 44. Defendant is presently serving his sentence at the Federal Correctional Institute Terminal Island ("FCI Terminal Island"). ECF No. 55 at 1. Robinson has served approximately forty-one months (55%) of his sentence.

Robinson is thirty-four years old. ECF No. 38. ("Presentence Investigation Report" or "PSR"). At the time of the PSR, Robinson was reported to be in "sound physical health." PSR ¶ 73. On April 25, 2020, Robinson tested positive for COVID-19. ECF No. 58-3 at 6. On September 9, 2021, Defendant claimed that he was still experiencing sickness from contracting COVID-19 for a second time. ECF No. 61 at 5. On September 20, 2021, Robinson submitted a request for compassionate release to the Warden of FCI Terminal Island stating that, due to his severe obesity (Body Mass Index of 43 kg/m2), hypertension, and poor kidney function, ECF No. 61 at 5, he would be particularly vulnerable if he were to contract COVID-19 a third time. *Id.* In his request, Robinson states that if released he would reside in Beaumont, California with his partner, their three children, and his partner's mother. ECF No. 61 at 8. On August 31, 2021, the Warden denied Robinson's request for administrative remedy. ECF No. 61 at 13.

Robinson now petitions this Court for compassionate release based on his risk of reinfection and the accompanying dangers due to his hypertension, severe obesity and poor kidney function. *Id.* at 8.

## II.    DISCUSSION

Defendant now moves for release under 18 U.S.C. § 3582(c)(1)(A), which provides, in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—
> (1) in any case—

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, there are two questions before the Court: first, whether Defendant has satisfied the administrative exhaustion requirement, and second, whether Defendant has demonstrated extraordinary and compelling reasons for a sentence reduction.

The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, "amends numerous portions of the U.S. Code to promote rehabilitation of prisoners and unwind decades of mass incarceration." *United States v. Brown*, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019) (citing Cong. Research Serv., R45558, The First Step Act of 2018: An Overview 1 (2019)). One of the changes resulting from the Act is that it "allows defendants, for the first time, to petition district courts directly for compassionate release." *Id.* As one district court recently explained:

> The effect of the amendments is that a district judge has the ability to grant a prisoner's motion for compassionate release even in the face of BOP opposition or its failure to respond to a prisoner's request for compassionate release in a timely manner. . . . Congress's express purpose in implementing these changes was to expand the use of compassionate release sentence reductions under § 3582(c)(1)(A). *See, e.g.*, First Step Act, PL 115-391, 132 Stat 5194, 5239 (titling the subsection amending § 3582, "Increasing the Transparency and Use of Compassionate Release"); 164 Cong. Rec. S7314- 02, 2018 WL 6350790 (Dec. 5, 2018) (statement by Senator Cardin, cosponsor of the First Step Act, noting that its purpose was to "expand[s] compassionate release" and "expedite[] compassionate release applications").

*United States v. Young*, No. 2:00-CR-00002-1, 2020 WL 1047815, at *5 (M.D. Tenn. Mar. 4, 2020); *see also United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *4 (D. Utah Feb. 18, 2020) ("[O]ne of the express purposes of the First Step Act was to increase the use and transparency of compassionate release.").

**A. Exhaustion Requirement**

Section 3582(c)(1)(A) imposes an exhaustion requirement which must be satisfied before a defendant may move the court for release.

On September 20, 2021, Robinson, proceeding *pro se*, submitted a request for release pursuant to 18 U.S.C. § 3582 to the Warden of FCI Terminal Island. ECF No. 61. His request was premised on the "extraordinary and compelling circumstances" brought on by COVID-19, including his heightened risk—as a result of his obesity, hypertension and poor kidney function—of becoming severely ill in the event he contracted COVID-19 for a third time. *Id.* at 5. Robinson's request to the Warden was denied on August 31, 2021. *Id.* at 13. It has been more than thirty days since Robinson's request. The Government concedes Robinson has properly exhausted his administrative remedies.

ECF No. 66 at 10. Robinson has successfully satisfied the exhaustion requirement, and his compassionate release motion addressed to this Court can be adjudicated on its merits.

### B. Extraordinary and Compelling Reasons

Section 3582(c)(1)(A) permits a sentence reduction only upon a showing of "extraordinary and compelling reasons," and only if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Prior to the First Step Act, the Sentencing Commission's applicable policy statement was found in Section 1B1.13 of the Sentencing Guidelines. U.S.S.G. § 1B1.13. Section 1B1.13 of the Sentencing Guidelines further explains that a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) may be ordered where a court determines, "after considering the factors set forth in 18 U.S.C. § 3553(a)," that:

> (1) (A) Extraordinary and compelling reasons warrant the reduction; ...
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> (3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13. Application Note 1 to this Guidelines provision enumerates certain circumstances constituting "extraordinary and compelling reasons" that justify a sentence reduction, including certain medical conditions, advanced age, certain family circumstances, or some "other" reason "[a]s determined by the Director of the Bureau of Prisons." The Note specifies that "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover" constitutes "extraordinary and compelling reasons" which justify compassionate release. *Id.*

However, the Sentencing Commission has not issued a new policy statement since the passage of the First Step Act, and Section 1B1.13 only refers to motions filed by the

1  Bureau of Prisons Director. As a result, the Ninth Circuit has held that Section 1B1.13 is
2  not an "applicable policy statement[]" for motions under 18 U.S.C. § 3582(c)(1)(A) filed
3  by a defendant. *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). The Court
4  therefore may consider Section 1B1.13 in its exercise of discretion, but it is not bound by
5  its definition of extraordinary and compelling reasons. *Id*. at 801–02

6       Here, because Robinson has served neither ten years in prison nor 75% of his
7  prison sentence, he must establish that his medical condition warrants compassionate
8  release under the more stringent standard for "extraordinary and compelling reasons." *Id*.
9  Robinson argues that extraordinary and compelling reasons—in the form of his obesity,
10 hypertension and poor kidney function—justify a reduction in his sentence. ECF No. 61
11 at 4. The Court disagrees.

12      The Court acknowledges the risk posed by Robinson's health warrants some
13 concern. Namely, Robinson suffers from severe obesity and hypertension, and claims that
14 his kidneys "are not functioning at 100%." ECF No. 61 at 5. Applying the Centers for
15 Disease Control and Prevention's ("CDC") body mass index ("BMI") calculation and
16 Robinson's information from the time of the Presentence Investigation Report (ECF No.
17 38, "PSR" at 3), Robinson's BMI can be estimated to be 43.8 kg/m2. *See Adult BMI*
18 *Calculator*, CDC (last visited March 11, 2022),
19 https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi
20 _calculator.html. The CDC describes a BMI in excess of 40 kg/m2 as "severe" obesity.
21 *See Adult Body Mass Index (BMI),* CDC (last visited March 11, 2022),
22 https://www.cdc.gov/obesity/adult/defining.html. "The risk of severe illness from
23 COVID-19 increases sharply with higher BMI." *People with Certain Medical Conditions,*
24 CDC (last visited March 11, 2022) (last updated February 25, 2022)
25 https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-
26 medical-conditions.html. *See Obesity, Race/Ethnicity, and COVID-19*, CDC (last visited

March 11, 2022), https://www.cdc.gov/obesity/downloads/data/obesity-maps/obesity-race-ethnicity-and-COVID-19-h.pdf ("A study of COVID-19 cases suggests that risks of hospitalization, intensive care unit admission, invasive mechanical ventilation, and death are higher with increasing BMI. The increased risk for hospitalization or death was particularly pronounced in those under age 65.").

However, Robinson declined to be vaccinated against COVID-19. ECF No. 70. An inmate's refusal to receive the "COVID-19 vaccination weighs against a finding of extraordinary and compelling circumstances." *United States v. Baeza-Vargas*, 532 F. Supp. 3d 840, 843–44 (D. Ariz. 2021) (collecting cases). This Court has also previously held that "[t]hough it is [a defendant's] choice whether to receive the vaccine, this Court would be remiss in granting compassionate release due to COVID-19 risks when [Defendant] has refused the most effective tool at his disposal for mitigating such risks." *United States v. Avalos-Villasenor*, No. 16-CR-02189-GPC, 2021 WL 3534983, at *4 (S.D. Cal. Aug. 11, 2021). The CDC reports that "[e]ven when fully vaccinated people develop symptoms, they tend to be less severe symptoms than in unvaccinated people. This means they are much less likely to be hospitalized or die than people who are not vaccinated." *See Possibility of COVID-19 Illness After Vaccination*, CDC (last visited March 12, 2022) https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/why-measure-effectiveness/breakthrough-cases.html.

The Government argues that Robinson "has rejected—and continues to reject—the opportunity to be immunized against COVID-19." ECF No. 66 at 13. Robinson attached a note to the last page of his motion for compassionate release claiming that he "never denied the covid vaccine." *Id*. Pursuant to the Court's February 2, 2022 Order directing the Government to file Robinson's medical records under seal, the Government produced the BOP's Health Services Immunization records (ECF No. 70) showing that Robinson was offered but "decline[d] to receive the COVID-19 vaccination." ECF No. 70 at 2. To

the extent Robinson argues that he "never denied the covid vaccine," his statement is expressly contradicted by the BOP's immunization records, and Robinson offers no further proof that he did not deny the vaccine. *Id*.

Although Robinson claims, as of September 20, 2021, he is "still currently sick with the virus," ECF No. 61 at 5, his primary concern is the risk of reinfection for a third time. District courts in the Ninth Circuit have found uncertainty surrounding the danger of reinfection "cuts against compassionate release" in part because it is the defendant's burden to establish that extraordinary and compelling reasons exist to justify compassionate release. *See, e.g., United States v. Molley*, No. CR15-0254-JCC, 2020 WL 3498482, at *3 (W.D. Wash. June 29, 2020); *United States v. Ieremia*, No. 16-CR-00744-DKW-1, 2021 WL 67313, at *3-*4 (D. Haw. Jan. 7, 2021) ("Although the Court recognizes that some reinfections are expected, … a [] chance of contracting a virus once recovered from … does not meet the bar for an extraordinary and compelling reason warranting release.") (quotations omitted)); *but see United States v. Yellin*, Case No. 3:15-cr-3181-BTM-1, 2020 WL 3488738, at *13 (S.D. Cal. June 26, 2020) (finding inmate's advanced age, combination of severe medical conditions, and percentage of time served constituted extraordinary and compelling reasons to warrant compassionate release, given inmate's risk of complications following reinfection). The risk of reinfection is a danger faced by all inmates during the current COVID-19 crisis. However, Robinson's refusal to receive the vaccine and mitigate his risk of reinfection means that he has not met his burden in establishing extraordinary and compelling reasons warranting compassionate release.

The most recent report from the Bureau of Prisons shows one inmate positive for COVID-19 at Terminal Island FCI and one positive staff member.[1] *See* BOP, COVID-19 Cases, https://www.bop.gov/coronavirus (last visited March 12, 2022). Currently, FCI Terminal Island is not in a state of emergency and is functioning pursuant to "Level 2 Operations." *See* BOP, FCI Terminal Island, (last visited March 14, 2022) https://www.bop.gov/locations/institutions/trm ("Modifications not necessary if social distancing is followed."). Accordingly, FCI Terminal Island is not in the midst of a COVID-19 outbreak. Although the Court does not minimize the concerns of inmates during the continuing COVID-19 pandemic, in Robinson's particular case, the current situation at FCI Terminal Island, combined with his refusal to receive a COVID-19 vaccine and his particular medical conditions do not rise to the level of extraordinary and compelling circumstances warranting a grant of compassionate release.

Finally, any relief to be granted pursuant to 18 U.S.C. § 3582(c)(1)(A) must be consistent with the sentencing factors set forth in § 3553(a).[2] *USA v. Trent*, No. 16-CR-00178-CRB-1, 2020 WL 1812242, at *1 (N.D. Cal. Apr. 9, 2020), *see also United States v. Parker*, 461 F. Supp. 3d 966, 980 (C.D. Cal. 2020). Here, even if Robinson's motion was supported by a showing of extraordinary and compelling reasons for his

---

[1] The total number of inmates at Terminal Island is 856. *See* https://www.bop.gov/locations/institutions/trm/

[2] Title 18 U.S.C. § 3553(a) provides that, in determining the sentence to be imposed, the court shall consider: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, protect the public from further crimes of the defendant and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

compassionate release, the Court is not persuaded that the requested reduction in his sentence would be consistent with consideration of those sentencing factors.

The Government argues that Robinson would pose a danger to public safety if released. ECF No. 66 at 16. Robinson distributed thousands of deadly fentanyl pills throughout the Central and Southern District of California, some of which were linked to the death of Tanner Branch, an active-duty sailor stationed in San Diego, California. *Id*. Given the seriousness of Robinson's offense, and considering the factors set out in 18 U.S.C. § 3553(a), the Court finds that the nature and circumstances of the offense weigh against granting the Motion to Reduce Sentence.

### III. CONCLUSION

For the reasons set forth above, Robinson's motion for compassionate release pursuant to 18 U.S.C. § 3582(c) is DENIED.

**IT IS SO ORDERED.**

Dated: March 23, 2022

Hon. Gonzalo P. Curiel
United States District Judge